## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TRINA CORA,

        Plaintiff,

        v.

TOOTSIE ROLL INDUSTRIES, LLC,
PETER LEBRON, Individually and
JOHN GRODOSKI, Individually,

        Defendants.

Case No. 18-cv-07468

Judge Martha M. Pacold

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendants' motion for summary judgment, [51], is granted in full. Defendants' motion to dismiss the complaint, [15], is denied as moot.

## BACKGROUND

Plaintiff Trina Cora worked for Defendant Tootsie Roll Industries for at least thirteen years. Cora brought this action on November 9, 2018, and filed an amended complaint on January 23, 2019. The amended complaint asserts claims against Tootsie Roll for sex and race discrimination, hostile work environment, and retaliation under both Title VII and the Illinois Human Rights Act ("IHRA") (775 ILCS 5/1 *et seq.*). It also asserts a claim against Tootsie Roll for sexual-orientation discrimination under the IHRA, as well as state-law claims for intentional infliction of emotional distress against defendants Peter Lebron (Tootsie Roll's Human Resources Manager) and John Grodoski (Tootsie Roll's Corporate Human Resources Director), and a state-law claim against Tootsie Roll under a theory of respondeat superior. Defendants move for summary judgment on all counts.

## I. Compliance with Local Rule 56.1

Cora's response to Defendants' Rule 56.1 statement of undisputed material facts contains numerous improper responses and objections. Many of Cora's responses do not provide a sufficient basis for disputing the asserted facts, either by not providing any citation to contradict asserted facts, or by making wholly inapposite argument and objections. (*See, e.g.,* Pl.'s Resp. Defs.' Stmt. Facts, Dkt. # 57, ¶¶ 6, 7 (not admitting or disputing defendant Grodoski or Lebron's corporate positions); ¶ 9 (failing to agree that Plaintiff read and signed a "Voluntary

Withdrawal Request Form" on September 29, 2016 without providing any contrary record citation); ¶ 16 (not admitting or disputing the accuracy of quotations from the Settlement Agreement that Plaintiff signed, but only providing inapplicable objections); ¶ 17 (objecting to the assertion that Peter Lebron personally removed certain documents from Plaintiff's personnel file as "based on Mr. Lebron's alleged understanding, which is conclusory and speculative" and asserting that Lebron "lacks personal knowledge" to support the assertion).) Further, several of Cora's objections to statements of facts are premised on Grodoski's supposed speculation or lack of knowledge. (*See id.* ¶¶ 12, 13, 15, 16, 25, 26, 27, 43, 44, 45, 46, 47, 50, 53, 54, 55, 56, 78.) However, Grodoski, a defendant who was employed as Tootsie Roll's Corporate Human Resources Director at the relevant times, (Pl.'s Resp. Defs.' Stmt. Facts, Dkt. # 57, ¶ 6), was designated and deposed as a corporate representative for Tootsie Roll. He was therefore permitted to testify to any matter known or reasonably available to "the organization," making these objections unpersuasive. Fed. R. Civ. P. 30(b)(6).

The Court may require strict compliance with Rule 56.1. "When parties populate their submissions with objections and arguments rather than with 'concise' factual statements and clear citations to competent evidence, they subvert the rule's essential purpose." *Samuels v. Schneider Nat'l Carriers*, No. 15 C 8468, 2018 WL 4590329, at *1 n.1 (N.D. Ill. Sept. 25, 2018). The Court is permitted "to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014). Defendants' undisputed facts identified above are deemed admitted, unless otherwise noted.

## II. Factual & Procedural History

In deciding Tootsie Roll's motion for summary judgment, the Court views the evidence in the light most favorable to Cora. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Because there are certain facts that are dispositive of Cora's claims, the Court will not delve into the full factual background that might otherwise be relevant to the claims.

### A. 2016 Charge of Discrimination & Settlement

In 2016, Cora filed a charge of discrimination with the EEOC and Illinois Department of Human Rights ("IDHR") alleging workplace harassment based on sex and sexual orientation. (Pl.'s Resp. Defs.' Stmt Facts, Dkt. # 57, ¶ 8.) The charge (IDHR Charge No. 2016 CF 1354 and EEOC Charge No. 21BA60465) involved the conduct of security guards Odie Nix and Latrice Carr. (*Id.*) Nix and Carr were employed by a company called Allied Barton and worked at the Tootsie Roll plant until July 2015 and August 2015, respectively. (*Id.* ¶¶ 26, 27.) The charge alleged that Carr had insulted Cora and Nix had threatened to cut her up

2

into small pieces and place her in a body bag. (Cora Dep., Ex. B, Dkt. # 55-3, at Page 74 of 80.) The specific instances of discrimination alleged were that on February 3, 2015 and February 17, 2015, HR manager Lebron discriminated against Cora based on her sex and sexual orientation by disbelieving Cora's complaints about Nix and Carr's conduct and requiring her to apologize to them. (*Id.*)

In September 2016, an IDHR investigator contacted Grodoski (again, at the time, the Corporate Human Resources Director) about settling these charges of discrimination. (Defs.' Stmt. Facts, Dkt. # 55, ¶ 11.) The IDHR investigator indicated that as part of a proposed settlement, Cora wanted to have two documents removed from her personnel file. (*Id.*) Tootsie Roll authorized a settlement providing a $500.00 gross lump sum cash payment (less any withholdings required by law) and the requested removal of two documents from Cora's personnel file in exchange for Cora's withdrawal of the charge and the release of all claims that could be legally waived. (*Id.* ¶ 12.) The IDHR investigator told Grodoski that Cora agreed to those terms, and Grodoski authorized a Tootsie Roll lawyer to draft a settlement agreement. (*Id.* ¶ 13.)

On September 27, 2016, Cora received an email from a Tootsie Roll attorney transmitting a three-page settlement agreement "regarding IDHR Complaint, No. 2016 CF 1354" for Cora's "review and signature." (*Id.* ¶ 14.) The settlement document states that Cora releases the Company "from any and all claims or liability of any kind arising out of or relating in any way to [her] employment with the Company . . . up to and including the date of this Agreement," including Title VII and IHRA claims. (*Id.* ¶ 16.) According to Cora, she was not represented by an attorney when she was presented with the settlement agreement. (Defs.' Resp. Pl.'s Stmt. Add'l Facts, Dkt. # 59, ¶ 15.) The next day, Cora brought the three-page agreement to Grodoski's office bearing her signature and the date. (Defs.' Stmt. Facts, Dkt. # 55, ¶ 15.) Grodoski signed and dated the agreement. (*Id.*) Cora testified in this case that she does not recall seeing the first two pages of that agreement. (*Id.* ¶ 14.)

Pursuant to the settlement agreement, Lebron removed from Cora's personnel file two February 2015 letters from Lebron to Cora regarding the harassment investigation. (*Id.* ¶ 17.) On September 29, 2016, Cora completed a "Voluntary Withdrawal Request Form," withdrawing the IDHR and EEOC charges. (*Id.* ¶ 9; Cora Dep., Ex. G, Dkt. # 55-3, at Page 75 of 80.) The withdrawal request form states that Cora requested to withdraw the 2016 charges of discrimination of her own free will, without pressure from any organization or individual. (Cora Dep., Ex. G, Dkt. # 55-3, at Page 75 of 80.) However, Cora testified that she had felt pressured to sign the settlement based on conversations she had with other Tootsie Roll employees including Miguel Sanchez, Lorenzo Padilla, and the company's nurse, Nancy Trejo. (Cora Dep. (cont'd), Dkt. # 57-1, at Pages 162–63 of 186.) None of those three individuals had the ability to make decisions regarding Cora's

employment, including any decisions regarding discipline, transfers, promotions, demotions, and layoffs. (Defs.' Stmt. Facts, Dkt. # 55, ¶ 21.) Cora also testified that IDHR Investigator Alliah Choudhury told her to sign the voluntary withdrawal form, and that she believed that she had to sign the voluntary withdrawal form to end the EEOC charge and move on with her employment. (Defs.' Resp. Pl.'s Stmt. Add'l Facts, Dkt. # 59, ¶ 17.)

Pursuant to the settlement, in September or October of 2016, Tootsie Roll sent Cora a check for $318.00, the settlement amount minus legal withholdings. (Defs.' Stmt. Facts, Dkt. # 55, ¶ 18.) Cora received the check and cashed it. (*Id.*) She has never returned the money to Tootsie Roll. (*Id.*) In November 2016, the Company received an "Order of Closure" regarding the 2016 discrimination charges. (*Id.* ¶ 10.)

### B.    Claims Relating to Pay and Position

Between 2016 and 2018, Cora also complained about issues regarding her pay, the placement of her position within departments, and training opportunities. For example, Cora alleges that she was not properly paid for hours worked overtime and was not properly paid for time worked in positions that require elevated pay under her collective bargaining unit (also referred to as "acting-out-of-classification" pay or "acting-up" pay). (*Id.* ¶¶ 35–38.) Additional details regarding Cora's pay and position are discussed as necessary in the Discussion section below.

### C.    2018 Charge of Discrimination

Cora filed another charge of discrimination on July 20, 2018. (EEOC Charge, Dkt. # 13-1, at 2.) In the 2018 charge, Cora alleges that she was discriminated against based on her age, sex, sexual orientation, and in retaliation for protected activity. Details of the alleged discrimination are not included in the 2018 Charge.

### DISCUSSION

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation and footnote omitted). Construing the

4

evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [the non-moving party's] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## I.      Settlement of All Claims Arising Before September 27, 2016

Cora released all claims arising before September 27, 2016 pursuant to her settlement, in exchange for the removal of two letters from her file and a monetary settlement.[1] Cora attempts to avoid the impact of her signed settlement by emphasizing that she was not represented by an attorney and asserting that she does not recall seeing the first two pages of the three-page settlement document. Cora also asserts that she felt pressured to settle her charges based on her conversations with fellow Tootsie Roll employees.

There is no dispute that Cora executed the settlement agreement releasing her claims. The undisputed facts show that Cora signed the settlement agreement and returned it to Grodoski. Cora acknowledges that she received an email from Tootsie Roll's counsel with the settlement agreement attached and agrees that she signed it but testified that she did not remember the first two pages of the three-page agreement. (Cora Dep., Dkt. # 57-1, at 61–68.) Cora's claim to not remember seeing pages of the agreement does not create a genuine factual issue that she did. *See Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 715 (N.D. Ill. 2017) ("Unlike an outright denial, Kostovetsky's lack of recollection cannot rebut the presumption that he received the letter, and so there is no genuine factual dispute.") (citing *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002) (explaining that the plaintiff did not "present any conflicting evidence" regarding his receipt of a properly addressed mailing, as he "[did] not contend that he did not receive the mailing—just that he does not remember receiving it")). Nor does Cora's purported failure to review the settlement agreement before executing it create a genuine factual dispute as to the release's "knowing and voluntary" nature. *Kinney v. Hamilton Partners*, No. 03 C 3905, 2004 WL 765882, at *5 (N.D. Ill. Apr.

---

[1] Cora agreed pursuant to the settlement agreement to withdraw the 2016 Charge. (Grodoski Decl., Ex. A, Settlement Agreement, Dkt. # 55-2, ¶ 2) ("As part of the consideration . . . of this Agreement, Ms. Cora agrees to withdraw, with prejudice, IDHR Charge No. 2016-CF-1354, which was cross-filed as EEOC Charge No. 21BA60465."). "[E]stablished case law holds that a claimant who voluntarily withdraws her administrative charge of discrimination before obtaining a right-to-sue letter, abandons her claims in the charge, fails to exhaust administrative remedies and may not sue in court." *Williams v. Tradewinds Servs., Inc.*, No. 2:10 CV 437, 2013 WL 832405, at *6 (N.D. Ind. Mar. 4, 2013). Thus, Cora also may not pursue the claims related to the 2016 Charge because she did not exhaust her administrative remedies.

7, 2004) (explaining that "[i]t is well-established that 'a plaintiff may waive a claim under Title VII . . . as part of a voluntary settlement, provided that her consent to the release was voluntary and knowing'" under the totality of the circumstances (quoting *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996))); *see also id.* at *8 ("[S]ince no evidence was offered to establish that Plaintiff did not have time to read the agreement, was not afforded an opportunity to read the agreement, or received advice that he should not or need not read the agreement, this factor favors Defendant."). As noted, Cora acknowledges receiving the agreement, and it is undisputed that she signed it and returned it to Grodoski. Cora testified at her deposition that she asked that the two letters be removed from her file, and that term was included in the agreement. (Cora Dep., Dkt. # 57-1, at 71–72.) She further testified that "[i]f [she] felt as though [she] needed to talk to somebody about it[,] [she] would have." (*Id.* at 72.) There is no genuine factual dispute that Cora's assent to the settlement agreement was knowing and voluntary.

Further, Cora cannot challenge the waiver of her Title VII claims pursuant to the settlement because she has retained the money she was given in exchange for her release. A settlement is a contract. *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992). It is "one of the most elementary principles of contract law . . . that a party may not rescind a contract without returning to the other party any consideration received under it." *Fleming v. U.S. Postal Serv. AMF O'Hare*, 27 F.3d 259, 260 (7th Cir. 1994). Consistent with that principle, "a release can be rescinded only upon a tender of any consideration received." *Id.* "In a Title VII lawsuit, a plaintiff must tender back any consideration she received before she can reassert the legal claims she previously relinquished under a release." *Wright v. Heritage Env't Servs.*, No. 99 C 7579, 2000 WL 1474410, at *3 (N.D. Ill. Oct. 4, 2000) (citing *Fleming*, 27 F.3d at 262). To date, Cora has not returned (nor offered to return) the consideration she received in exchange for her settlement. For these reasons, Cora has waived the claims that were subject to the settlement's release, meaning all claims arising before September 27, 2016.

## II. Title VII Discrimination Claims (Counts I–IV)

Timeliness of allegations. Defendants contend that most of the alleged adverse actions in the amended complaint must be dismissed as untimely because they occurred more than 300 days prior to July 23, 2018, the date Cora filed her 2018 Charge. (Defs.' Mem. Supp. Mot. Summ. J., Dkt. # 53, at 6) (asserting that claims based on the allegations in paragraphs 18, 22, 26, 32, 35, 37, 39, 42, 44, 48, 56, 58, 59, 63, 65, 67, and 68 are time-barred). But even assuming Cora's claims premised upon the 2018 Charge were timely, were not abandoned, and were not extinguished by Cora's settlement of those complaints, Cora has not demonstrated a

6

genuine issue of material fact with respect to her claims of race and sex discrimination, hostile work environment, and retaliation.[2]

    <u>Race and Sex Discrimination (Counts I and II)</u>.  Cora can seek to defeat summary judgment on her race and sex discrimination claims under two methods:

> First, Plaintiff may use the framework developed by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case by showing that: "(1) [s]he belongs to a protected class; (2) [s]he met h[er] employer's legitimate expectations; (3) [s]he suffered an adverse employment action; and (4) another similarly situated employee outside of h[er] protected class received better treatment from h[er] employer."  Once the plaintiff establishes a prima facie case, the burden then "shifts to the employer to offer a nondiscriminatory motive"; if the employer does this, "the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext."

> In *Ortiz v. Werner Enterprises, Inc.*, the Seventh Circuit introduced an alternative to the *McDonnell Douglas* framework.  Under *Ortiz*, the core question in any employment discrimination case "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action" at issue.  When using this approach, courts ask only "whether the totality of the evidence shows discrimination, eschewing any framework or formula."

>  The Seventh Circuit's decision in *Ortiz*, however, "did not alter '*McDonnell Douglas* or any other burden-shifting framework.'"

*Johnson v. Soo Line R.R. Co.*, No. 17-cv-7828, 2022 WL 540758, at *9–10 (N.D. Ill. Feb. 23, 2022) (internal citations omitted).

---

[2] Counts I and II of the Amended Complaint are labeled "Racial Discrimination" and "Sex Discrimination," respectively.  Both Count I and II allege that Defendant "committed an unlawful employment practice *by subjecting Ms. Cora to a hostile work environment* in which she was subjected to ongoing intimidation, ridicule and insults based upon Ms. Cora's race" (Count I) and sex (Count II).  (Am. Compl., Dkt. # 13, ¶¶ 84 and 91) (emphasis added).  Count III, however, is labeled "Hostile Work Environment," and contains the same allegation as Counts I and II, stating that Defendant "committed an unlawful employment practice by subjecting Ms. Cora to a hostile work environment in which she was subjected to ongoing intimidation, ridicule and insults based upon Ms. Cora's race and sex."  (*Id.*, ¶ 98.)  Thus, Count III appears to allege the same claim as Counts I and II.  In their briefing, however, the parties treat Counts I and II as alleging disparate treatment race and sex discrimination claims, so the Court does as well.

"In the wake of *Ortiz*, '[t]he *McDonnell Douglas* framework is just a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence—*evidence that similarly situated employees not in the plaintiff's protected class were treated better*—would permit a jury to infer discriminatory intent.'" *Lewis v. Wilkie*, 909 F.3d 858, 867 (7th Cir. 2018) (emphasis added). But Cora points to no similarly situated employees whatsoever, let alone any who were not in Cora's class and were treated better. Thus, Cora has not shown an issue of fact with respect to her race and sex discrimination claims under the *McDonnell-Douglas* approach.

Even analyzing the totality of the evidence to which Cora points, summary judgment is warranted on these claims. The entirety of the evidence cited by Cora in support of these claims is as follows:

- Cora "was the only female, African-American and non-supervisor present at her disciplinary hearing."
- "Lebron did not conduct any other investigation into allegations of misconduct other than the two incidents that occurred in January and February 2015."
- Cora has been treated differently since she filed her EEOC complaints in 2015, "including but not limited to Danka Blackovich tapping her ass multiple times because she is a lesbian, African-American woman."
- Since December 2014, Cora's "co-workers, including but not limited to her supervisors, [were] aware of her sexual orientation because of the things they say to her about her sexual orientation."
- Cora "was the only employee at Tootsie Roll paid a lower wage for work that she completed."
- "Defendant Grodoski recognized that Ms. Cora's belief that she was being discriminated against was reasonable."
- "Tootsie Roll never conducted an investigation into Ms. Cora's complaint that the harassment by the security guards continued."

(Pl.'s Mem. Law Opp'n, Dkt. # 56, at 10–11.)

After reciting these facts, Cora states in a conclusory fashion that "[b]ased on the foregoing, Plaintiff has alleged disputed material facts and Defendant's [m]otion for [s]ummary [j]udgment should be denied." (*Id.*) But Cora's conclusion is wholly unsupported by any application of the facts to the relevant law. "A district court is entitled to expect a party moving for or opposing summary judgment to lay out her arguments and the supporting, admissible evidence in sufficient detail that the court is not forced to construct the arguments itself." *Lewandowski v. City of Milwaukee*, 823 F. App'x 426, 430 (7th Cir. 2020). Cora's failure to do so means that her race and sex discrimination claims (Counts I and II) are waived. *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (explaining that, where a party

8

fails to support its position with any legal analysis or citation, the argument is waived); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("[P]erfunctory and undeveloped arguments . . . are waived . . . .").

Even if these claims were not waived, the Court would find that Defendant is entitled to summary judgment on these claims. *Ortiz* clarifies that the core inquiry in an employment discrimination claim is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action" at issue. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). An adverse employment action under Title VII "is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vassileva v. City of Chicago*, No. 19-cv-04064, 2023 WL 2499859, at *10 (N.D. Ill. Mar. 14, 2023) (quoting *Chaudry v. Nucor Steel-Indiana*, 546 F.3d 832, 838 (7th Cir. 2008)).

Although Cora does not develop the argument, the Court discerns some potential adverse employment actions in the list Cora recites. First, Cora contends that she was "paid a lower wage." (Pl.'s Stmt. Add'l Facts, Dkt. # 57, ¶ 37) (citing Grodoski Dep. at 114.) Grodoski, Defendant's Director of Human Resources at the relevant time, testified that Danka Veskovich, a department manager, was forced to retire because she was "loosey-goosey" in the way she managed her department and paid certain people for hours they did not work, which resulted in Cora being paid less, "in this instance." (Grodoski Dep., Dkt. # 57-3, at 105–07, 114.)[3] While Grodoski testified that Cora was the only employee whom "[he] [could] think of" who was paid less because of Veskovich's misconduct, Cora fails to point to any record evidence from which a reasonable factfinder could conclude that she was intentionally paid less because of her race or sex. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) (noting that the plaintiff "recite[d] a litany of past wrongs purportedly probative of race or sex discrimination, including mandatory tasks made voluntary for others, increased workload, constant admonishment, arbitrary remote work and identification policies, and general harsh treatment," but holding that this did not create a genuine issue because the plaintiff had not offered sufficient evidence that these actions were based on a protected characteristic).

Cora's cited evidence of race and sex discrimination also includes a contention that her supervisor, Danka Blackovich, "tapp[ed] Plaintiff on her ass multiple

---

[3] Grodoski also testified that he attempted to work out a settlement with Cora's union representative regarding the amount of money she was owed, but the negotiations "fell apart." (Grodoski Dep., Dkt. # 57-3, at 108–12.)

9

times." (Pl.'s Stmt. Add'l Material Facts, Dkt. # 57, at Page 27 ¶ 25.)[4]  "[E]xamples of adverse employment actions include . . . unbearable changes in job conditions such as a hostile work environment."  *Jones v. City of Chicago*, No. 21 C 137, 2023 WL 3479172, at *7 (N.D. Ill. May 16, 2023).  "Surviving summary judgment on a hostile work environment claim requires sufficient evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability."  *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).  "A hostile work environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 851 (7th Cir. 2019) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "A hostile work environment is based on the totality of the circumstances," and courts consider "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Demkovich v. St. Andrew the Apostle Par.*, 3 F.4th 968, 977 (7th Cir. 2021) (quoting *Harris*, 510 U.S. at 23).

Despite the troubling nature of Cora's allegations, Cora's failure to apply the facts to the law dooms this claim.  She makes no effort to demonstrate that the inappropriate touching she alleges would allow a reasonable jury to conclude that her work environment was subjectively and objectively offensive, that the conduct was severe or pervasive, and that a basis for employer liability exists.  *See Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 463–64 (7th Cir. 2002); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361–62 (7th Cir. 1998).  Most importantly, Cora points to no evidence that the touching was based on her race or sex.  *See Mercer v. Cook County*, 527 F. App'x 515, 521 (7th Cir. 2013).  Cora has not pointed to evidence sufficient to create a genuine issue of fact as to whether she suffered an adverse employment action based on a hostile work environment.

The only other fact Cora lists in her discussion of Counts I and II that could possibly be construed as an adverse employment action involves the alleged lack of investigation by Lebron regarding her complaints of harassment or misconduct by co-workers.  But Cora does not specify the harassment to which she refers.  As noted above, to the extent Cora is referring to a lack of investigation regarding harassment by the Allied Barton security guards in 2015, Cora not only released

---

[4] Cora refers to her supervisor as Danka Blackovich.  (Pl.'s Resp., Dkt. # 56, at 10.)  With respect to Cora's contention that she was not properly paid for the hours she worked, Grodoski testifies about the actions of Danka Veskovich, whom he refers to as Cora's department manager.  It is not clear whether Cora and Grodoski are identifying the same person.  Regardless, the difference does not alter the Court's conclusion regarding Cora's race and sex discrimination claims.

claims related to those allegations, but she also withdrew her 2016 charge relating to that conduct. Even assuming other unspecified investigatory deficiencies existed, Cora does not address how the alleged lack of an investigation constitutes an adverse employment action,[5] let alone demonstrates intentional race or sex discrimination.

For these reasons, the Court grants Defendants' motion for summary judgment as to the race and sex discrimination claims (Counts I and II).

Hostile work environment (Count III). As noted above, Cora has pleaded a separate count (Count III) alleging hostile work environment. The same elements recited in the previous section apply here. In her response to Defendants' contention that they are entitled to summary judgment on the hostile work environment claim, Cora refers to her arguments and citations in Section B of her brief, which address her retaliation claim. Again, with no elaboration or explanation, Cora asserts that the following allegations demonstrate that a reasonable jury could conclude she has suffered retaliation, and as applied here, a hostile work environment:

- Lebron, Defendants' Human Resources Manager, admitted that the conduct by Carr, a contract security officer from an outside security firm, constituted illegal retaliation against Cora based upon the timing of Carr's conduct.
- "Lebron did not watch anything other than the one[-]minute video and did not know whether or not outside of that one minute there was video that showed the confrontation between Carr and" Cora.
- Lebron "strongly suggested that Ms. Cora apologize to Carr and told her that she could face disciplinary action, including termination, if she did not apologize."

(Pl.'s Mem. Law Opp'n, Dkt. # 56, at 11–12.) Cora then states, "See also (Pl. SOF ¶¶ 11, 12, 13, 20, 21, 22, 24, 25, 26, 29, 30, 31, 32, 36, 37, 38, 39, 40)," and concludes that "based on the foregoing, Plaintiff has alleged disputed material facts," and

---

[5] An adverse employment action under Title VII includes:

(1) diminishing an "employee's compensation, fringe benefits, or other financial terms of employment," including termination; (2) reducing long-term career prospects "by pre-venting h[er] from using the skills in which [s]he is trained and experienced, so that the skills are likely to atrophy and h[er] career is likely to be stunted"; and (3) changing "the conditions in which [an employee] works . . . in a way that subjects h[er] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in h[er] workplace environment."

*Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (citation and emphasis omitted).

summary judgment should be denied. (*Id.* at 12.) As an initial matter, Cora's reliance on Carr's or Lebron's conduct is unpersuasive because she released all claims regarding that conduct in the 2016 settlement agreement. Even if the claims based on Carr's and Lebron's conduct had not been released, Cora's failure to explain how the cited facts create a genuine issue as to whether she suffered intentional discrimination based on a hostile work environment would result in waiver of this claim. "It is not the obligation of th[e] court to research and construct the legal arguments open to parties, especially when they are represented by counsel," *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1036 (7th Cir. 2021), and the Court declines to do so here. *Cf. Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019) ("a court is not to become an advocate") (citation and internal quotation marks omitted).

For these reasons, the Court grants Defendants' motion for summary judgment as to Cora's hostile work environment claim (Count III).

Retaliation (Count IV). "To survive summary judgment on a Title VII retaliation claim, an employee 'must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [defendant] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two.'" *Abrego v. Wilkie*, 907 F.3d 1004, 1014 (7th Cir. 2018) (quoting *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017)). The facts supporting this claim are recounted in the previous section. Again, however, even assuming for purposes of this motion that the claim has not been released to the extent it is based on Lebron's 2016 investigation and that the occurrences Cora references constitute materially adverse employment actions, Cora wholly fails to demonstrate any issue of fact regarding the existence of a but-for causal connection between her complaints and Lebron's actions. Accordingly, the Court grants Defendants' motion for summary judgment as to Cora's retaliation claim (Count IV).

## IV. State-law IHRA claims (Counts V–IX)

Cora also alleges claims under the IHRA, 775 ILCS 5/1-102, for race discrimination (Count V), sex discrimination (Count VI), sexual-orientation discrimination (Count VII), hostile work environment (Count VIII), and retaliation (Count IX).

Cora may not pursue these claims in this suit, however, because the evidence demonstrates that Cora failed to exhaust her administrative remedies with respect to these state-law claims. As another court in this district explained:

The IHRA requires a complainant to exhaust administrative remedies prior to filing a civil lawsuit. Generally, the complainant first must file a charge with the IDHR within 300 days of the alleged civil rights

violation. *See* 775 ILCS 5/7A–102(A). Ten days after the filing of a charge, the IDHR notifies the complainant of his right, which must be exercised within 60 days of receiving the notice, to "opt out" of its investigation of the charge and directly commence a civil action in court. 775 ILCS 5/7A–102(B) ("The Department shall, within 10 days of the date on which the charge was filed, serve a copy of the charge on the respondent and provide all parties with a notice of the complainant's right to opt out of the investigation within 60 days[.]"), (C-1) ("At any time within 60 days after receipt of notice of the right to opt out, a complainant may submit a written request seeking notice from the Director indicating that the complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction."). If the complainant does not timely opt out of IDHR's investigation, he may file a civil suit once the IDHR investigates the charge and issues a report, *see* 775 ILCS 5/7A–102(D), or in the event that IDHR fails to issue a report within a year of the charge being filed, *see* 775 ILCS 5/7A–102(G)(2). Failure to comply with the IHRA's exhaustion requirements warrants dismissal of an IHRA claim. *See Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 640 (7th Cir. 2004).

*Smith v. City of Chicago*, No. 18 C 8075, 2021 WL 463235 (N.D. Ill. Feb. 9, 2021), *aff'd sub nom. Smith v. Evans*, No. 20-2556, 2022 WL 205414 (7th Cir. Jan. 24, 2022) (unpublished); *see also Copeling v. Illinois State Toll Highway Auth.*, No. 12 C 10316, 2014 WL 540443, at *3–5 (N.D. Ill. Feb. 11, 2014) (describing and applying the IHRA's exhaustion requirements); *Jimenez v. Thompson Steel Co.*, 264 F. Supp. 2d 693, 695 (N.D. Ill. 2003) ("Under Illinois law, the comprehensive scheme of remedies and administrative procedures of the IHRA is the exclusive source of redress for alleged violations of the act." (citing *Mein v. Masonite Corp.*, 485 N.E.2d 312, 315 (Ill. 1985))).

The IHRA's exhaustion requirement for state-law claims brought under the act is distinct from the exhaustion requirement imposed by Title VII. A plaintiff therefore cannot satisfy the IHRA's exhaustion requirement merely by pointing to a right-to-sue letter the plaintiff obtained from the EEOC. *See, e.g., Smuk v. Specialty Foods Grp., Inc.*, No. 13 C 8282, 2015 WL 969969, at *1 (N.D. Ill. Mar. 2, 2015) ("[A] right to sue letter from the EEOC does not serve as a substitute for a final order from the IDHR and cannot cure [the plaintiff's] failure to exhaust as to the IHRA claims."); *Anderson v. Centers for New Horizons, Inc.*, 891 F. Supp. 2d 956, 960 (N.D. Ill. 2012) ("[A] right to sue letter from the EEOC does not serve as a substitute for a final order from the [IDHR]." (second alteration in original) (quoting *Jimenez*, 264 F. Supp. 2d at 695)); *Hankins v. Best Buy Co.*, No. 10 CV 4508, 2011 WL 6016233, at *6 (N.D. Ill. Dec. 2, 2011) ("[T]he fact that [the plaintiff] received a

right to sue notice from the EEOC does not establish that he may bring suit under the IHRA.").

Here, the evidence indicates that Cora did not exhaust her IHRA claims before the IDHR. Cora presents no evidence that she ever received a final order from the IDHR, nor does she present any argument or evidence that she somehow otherwise exhausted her claims under the IHRA. The record contains an October 12, 2018 letter from the IDHR to Cora indicating that the IDHR was *beginning* to investigate Cora's claims after Cora had received a decision from the EEOC. (Grodoski Decl., Ex. C, Dkt. # 55-2 at 33–34.) But there is no indication that IDHR ever concluded this investigation. Indeed, Cora appears to acknowledge that this investigation never concluded, as her response to defendants' motion for summary judgment indicates that Cora "received correspondence from the IDHR on February 7, 2019 advising her that it stayed its investigation pursuant to Section 7A-102(G)(4) of the Human Rights Act." (Pl.'s Mem. Law Opp'n, Dkt. # 56, at 4.). Cora elaborates that "the correspondence stated that the IDHR 'shall stay any administrative proceedings under this Section after the filing of a civil action by or on behalf of the aggrieved party under any federal or State law seeking relief with respect to the alleged civil rights violation.'" (*Id.* at 5; *see also* Pl.'s Resp. Defs.' Stmt. Facts, Dkt. # 57, Ex. 4 (the letter cited by Cora).) Cora thus admits that the IDHR never issued a final decision on her claims.

Moreover, although the IHRA also permits a plaintiff to file suit within a 90-day period if the IDHR fails to issue a report on the claim within 365 days, *see* 775 ILCS 5/7A–102(G)(2); *Copeling*, 2014 WL 540443, at *4, Cora cannot rely on this provision here. The first of the two letters discussed above indicates that IDHR was just beginning to investigate Cora's claim in October 2018. (Grodoski Decl., Ex. C, Dkt. # 55-2 at 33–34.) The letter also explicitly identified the 90-day period during which Cora could file a suit if the IDHR failed to act. That period ran from "8/8/2019 through 11/5/2019." (*Id.* at 34.) But Cora filed this suit on November 9, 2018, just a month after Cora received the letter from IDHR and nearly a year before she would have been permitted to file suit under 775 ILCS 5/7A–102(G)(2). Cora's claims therefore were not exhausted by the IHRA's time-limit provision. *See Copeling*, 2014 WL 540443, at *4 ("The record conclusively establishes that [the plaintiff] filed this suit before the 365 days had elapsed . . . . It follows that [the plaintiff] failed to properly exhaust her IHRA claim . . . .").

And there is no evidence that Cora exercised the opt-out option provided under 775 ILCS 5/7A–102(C-1). Cora does not provide any evidence or argument that she submitted the required opt-out request to IDHR or received the "notice from the director indicating that the complainant has opted out of the investigation and may commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction." 775 ILCS 5/7A–102(C-1). In fact, as described above, the evidence indicated that Cora affirmatively *requested* that

IDHR review her charge. (Grodoski Decl., Ex. C, Dkt. # 55-2 at 33–34 (letter from IDHR acknowledging Cora's "request for the Department to investigate").) Moreover, the fact that IDHR *stayed* Cora's administrative proceedings in February 2019—a time that would have been beyond the 60-day opt-out period—further demonstrates that Cora did not exercise the opt-out provision. (Pl.'s Mem. Law Opp'n, Dkt. # 56, at 4. (describing the letter); Pl.'s Resp. Defs.' Stmt. Facts, Dkt. # 57, Ex. 4 (the February 7, 2019 letter).) Had Cora opted out, there would have been no ongoing proceedings to stay. The record thus establishes that Cora failed to exhaust her IHRA claims.

Cora argues that she nevertheless exhausted her state administrative remedies because she "cross-fil[ed] a charge with the EEOC and IDHR and allowed the IDHR 60 days to act," which Cora believes means that "she was free to file suit in federal court once she received her right to sue letter from the EEOC." (Pl.'s Mem. Law Opp'n, Dkt. # 56, at 5.) This argument confuses the exhaustion requirement for Title VII claims—which generally "requires that 'state and local agencies [be] given an initial deferral period of at least sixty days to investigate a charge of discrimination,'" *Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999) (alteration in original) (quoting *Riley v. Am. Fam. Mut. Ins. Co.*, 881 F.2d 368, 370 (7th Cir. 1989))—with the separate exhaustion requirement for claims under the IHRA. Indeed, as explained above, "a right to sue letter from the EEOC does not serve as a substitute for a final order from the IDHR and cannot cure [the plaintiff's] failure to exhaust as to the IHRA claims." *Smuk*, 2015 WL 969969, at *1; *see also Anderson*, 891 F. Supp. 2d at 960; *Hankins*, 2011 WL 6016233, at *6. The Court therefore grants Defendants' motion for summary judgment as to Counts V–IX. These claims are dismissed without prejudice for failure to exhaust. *See Smith*, 2021 WL 463235, at *6 (dismissing IHRA claims without prejudice for failure to exhaust); *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989) ("[T]he proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims.").[6]

## V. State-law Intentional Infliction of Emotional Distress Claims against Lebron and Grodoski (Count X and XI)

As their first basis for judgment on the state-law intentional infliction of emotional distress ("IIED") claims, Defendants incorporate an argument made in

---

[6] The Court notes that even if these claims were properly exhausted, the Court would decline to exercise supplemental jurisdiction over these exclusively state-law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 351–52 (7th Cir. 2019); *see also Smith v. Evans*, No. 20-2556, 2022 WL 205414, at *3 (7th Cir. Jan. 24, 2022) (unpublished).

their motion to dismiss, which asserts that the IIED claims are preempted by the IHRA. The IHRA "preempts all other state-law claims that are 'inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself.'" *Goodlet v. City of Chicago*, No. 22 C 570, 2023 WL 2499862, at *4 (N.D. Ill. Mar. 14, 2023) (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997)). "Tort claims are not inextricably linked with a civil rights violation 'where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act.'" *Id.* (quoting *Maksimovic*, 687 N.E.2d at 24). Civil rights violations under the IHRA include acting "with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, [or] privileges or conditions of employment on the basis of unlawful discrimination. . . ." *Id.* (citing 775 ILCS 5/2-102(A)). "'[T]he concrete question to ask [with respect to preemption] is whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the [IHRA].'" *Id.* (second alteration in original) (quoting *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017)). "The IHRA is the exclusive remedy for civil-rights violations." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017).

"To successfully bring an intentional infliction of emotional distress claim under Illinois law, a plaintiff must establish that: '(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress.'" *Quist v. Park Tower Condo. Ass'n*, No. 22 C 6618, 2023 WL 3886137, at *3 (N.D. Ill. June 7, 2023) (quoting *Richards*, 869 F.3d at 566). "Illinois courts have found extreme and outrageous behavior to exist in the employer/employee context when the employer 'clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment.'" *Phelps v. Ill. Dep't of Corr.*, No. 22 C 932, 2023 WL 4029896, at *12 (N.D. Ill. June 15, 2023) (quoting *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006)).

Cora's entire argument in opposition to Defendants' motion for summary judgment on these claims is:

> Here, Plaintiff alleged that she complained of two egregious incidents to the human resources department, including Defendants Lebron and Grodoski, regarding being threatened and harassed by fellow co-workers at Tootsie Roll. Instead of completing a proper investigation into Plaintiff's allegations, Lebron called her a liar and threatened her job.

(Pl.'s Mem. Law Opp'n, Dkt. # 56, at 13.) Thus, Cora's IIED claims rest on her contention that Lebron violated her civil rights by failing to conduct a proper

investigation of her complaints and by retaliating against her with his alleged threat to fire her. These are rights protected under the IHRA. Therefore, the claims are preempted. *See Nischan*, 865 F.3d at 934 ("The alleged extreme and outrageous conduct is the sexual harassment and retaliation that constitutes her IHRA civil rights claims such that without these allegations plaintiff would have no [IIED] claim." (internal quotation omitted)).

Even if these claims were not preempted by the IHRA, Defendants would be entitled to summary judgment on the merits. Despite naming Grodoski as a defendant, Cora does not point to any conduct by him, let alone extreme and outrageous conduct.[7] As to Lebron, not only has Cora released any claims based on Lebron's purportedly calling her a liar and directing her to apologize to the Allied Barton security guards, but such conduct also would not suffice to allow a reasonable jury to conclude that Cora had suffered intentional infliction of emotional distress. The Court therefore grants Defendants' motion for summary judgment as to Counts X and XI.

## VI. State-Law Respondeat Superior Claim (Count XII)

"[T]he doctrine of respondeat superior, which provides that a principal may be liable for the tortious actions of its agent even if the principal itself does not engage in any conduct in relation to the plaintiff, is an exception to the general rule that a person injured by the tortious act of another must seek relief from the person who caused the injury." *Chessie Logistics Co. LLC v. Krinos Holdings, Inc.*, No. 13 C 8864, 2016 WL 7034101, at *5 (N.D. Ill. Dec. 2, 2016). For the reasons stated above, Cora has failed to establish that any agent of Tootsie Roll engaged in tortious conduct. There is therefore no tortious conduct for which Tootsie Roll could be vicariously liable. Accordingly, the Court grants Defendants' motion for summary judgment as to Count XII.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment [51] is granted in full. Defendants' motion to dismiss [15] is denied as moot. Enter final judgment. Civil case terminated.

Date: March 29, 2024                          /s/ Martha M. Pacold

---

[7] While Defendants refer to allegations in the complaint against Grodoski in their opening memorandum of law in support of their motion for summary judgment, (Defs.' Resp., Dkt. # 53, at 14), allegations in a complaint "suffice at the pleading stage, but summary judgment requires evidence." *Black v. City of Chicago*, No. 18 C 6518, 2022 WL 425586, at *6 (N.D. Ill. Feb. 11, 2022). Thus, Defendants need not establish a genuine issue of material fact with respect to the allegations in the amended complaint unless those allegations are cited by Cora and supported by record evidence.